UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-488-DMG (AGRx)** | Date | August 2, 2022 |
|---|---|---|---|

| Title | ***DraftExpress, Inc. v. Whistle Sports, Inc.*** | Page | 1 of 7 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:   IN CHAMBERS—ORDER RE DEFENDANT WHISTLE SPORTS, INC.'S MOTION TO DISMISS [13]**

On January 24, 2022, Plaintiff DraftExpress, Inc. ("DraftExpress") filed the Complaint in this action against Defendant Whistle Sports, Inc. ("Whistle"), alleging copyright infringement. [Doc. # 1.]  On March 21, 2022, Before the Court is the motion to dismiss ("MTD") filed by Defendant Whistle Sports, Inc. ("Whistle").  [Doc. # 13.]  The motion has been fully briefed. [Doc. ## 17, 18.]  For the following reasons, the MTD is **GRANTED**.

**I.
FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff DraftExpress, Inc. ("DraftExpress") is the registered owner of the copyright for a video of an interview with basketball star Giannis Antetokounmpo ("Giannis"), which was published on February 20, 2013, when Giannis was a teenager (the "DraftExpress Interview"). Compl. ¶¶ 17-19 [Doc. # 1].  The DraftExpress Interview is a static video depicting only a close-up of Giannis from about the chest up.  *See* Bandlow Decl., Ex. B [Doc. # 14].[1]  Giannis appears boyish, slightly hunched-over, and soft-spoken, perhaps unaccustomed to being interviewed.[2]  A person off-camera asks Giannis a series of standard sports interview questions—*i.e.*, about his playing style, his accomplishments, his goals and aspirations, etc.—which Giannis answers. Giannis appears to be seated and looking up at the interviewer, which has the effect of emphasizing his youthfulness and making him seem small.  The DraftExpress Interview is three minutes and ten seconds long.  *Id.*

---

[1] DraftExpress did not file a copy of the Interview with its Complaint, but Whistle requests that the Court take judicial notice of it, which DraftExpress does not oppose.  [Doc. # 13-3.]  The DraftExpress Interview is incorporated by reference in the Complaint, so the Court **GRANTS** Whistle's request for judicial notice of it.  *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[2] Whistle describes Giannis in the Interview as "timid and shy," a characterization with which DraftExpress quibbles.  *See* MTD at 9; Opp. at 14-15.  In the Court's view, the description in the factual summary above is most fair and accurate.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-488-DMG (AGRx)** | Date | August 2, 2022 |
|---|---|---|---|

| Title | ***DraftExpress, Inc. v. Whistle Sports, Inc.*** | Page | 2 of 7 |
|---|---|---|---|

On July 21, 2021, DraftExpress discovered that an excerpt from the Interview was used in a video posted by Whistle on its Twitter account (the "Whistle Video"). Compl. ¶¶ 20-22. The Whistle Video begins with a two-second excerpt from the DraftExpress Interview, which consists solely of Giannis saying, "my name is Giannis Antetokounmpo." *See* Bandlow Decl., Ex. C [Doc. # 14].[3] The clip is mostly unaltered, except that it is slightly zoomed in closer to Giannis's face and appears to have a subtle yellowish filter. After this excerpt, the Whistle Video cuts to a highlight reel of the adult Giannis playing in the NBA, performing impressive dunks and otherwise demonstrating his tremendous skills and athletic abilities. The highlight reel is interspersed with enthusiastic commentary and comedic memes conveying shock and awe. The Whistle Video does not use any other portions of the DraftExpress Interview other than the segment of Giannis saying his name. The Whistle Video is one minute and six seconds long. *Id.*

Whistle did not obtain a license from DraftExpress for its use of the footage from the Interview. Compl. ¶ 23. On January 24, 2022, DraftExpress sued Whistle for copyright infringement for its use of the Interview excerpt. *See generally id.* On March 21, 2022, Whistle filed the instant MTD, in which it asserts that its use of the DraftExpress Interview was (1) fair use and (2) *de minimis*, and therefore protected as a matter of law.

**II.**
**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) states that a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). On a motion to dismiss, a court may consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Iqbal*, 556 U.S. at

---

[3] As with the DraftExpress Interview, the Court **GRANTS** Whistle's request for judicial notice of the Whistle Video.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-488-DMG (AGRx)** | | Date | August 2, 2022 |
|---|---|---|---|---|

| Title | *DraftExpress, Inc. v. Whistle Sports, Inc.* | | Page | 3 of 7 |
|---|---|---|---|---|

678 (citing *Twombly*, 550 U.S. at 555).   Legal conclusions, in contrast, are not entitled to the assumption of truth.  *Id.*

Should a court dismiss certain claims under Rule 12(b)(6), "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009) (quoting Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

**III.**
**DISCUSSION**

**A.    Fair Use**

Under 17 U.S.C. section 107, the "fair use" of a copyrighted work "for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research, is not an infringement of copyright."  The fair use exception "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1196 (2021). Courts generally consider four factors in the fair use analysis:  (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. § 107.   These factors are "not exhaustive," however, but "set forth general principles, the application of which requires judicial balancing, depending upon relevant circumstances." *Google*, 141 S. Ct. at 1197.

Fair use is a mixed question of law and fact.  *Id.* at 1199.   Thus, "courts should appropriately defer to the jury's findings of underlying facts [or, as in this case, to the plaintiff's well-pled factual allegations]; but [] the ultimate question whether those facts showed a 'fair use' is a legal question for judges." *Id.*  Accordingly, the Court may consider the fair use defense on a motion to dismiss by applying the doctrine to the facts as they appear in the Complaint and those materials incorporated by reference therein, such that "the ultimate 'fair use' question primarily involves legal work." *Id.*; *see also Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 321 (5th Cir. 2022) ("[I]f the complaint sets forth all the ingredients of a successful fair-use defense, discovery is unnecessary.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-488-DMG (AGRx)** | Date | August 2, 2022 |
|---|---|---|---|

| Title | ***DraftExpress, Inc. v. Whistle Sports, Inc.*** | Page | 4 of 7 |
|---|---|---|---|

### 1.      Purpose and Character of the Use

The central inquiry of the first fair use factor is whether the new work is "transformative," such that it alters the original with "new expression, meaning, or message" or comments on the original author's work. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579–80 (1994). "A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006).

DraftExpress argues that Whistle's use of the DraftExpress Interview cannot be transformative because the excerpt is featured for the same purpose as in the original:  to introduce Giannis.[4]  Opp. at 13.[5]  This is an oversimplification.  Whistle chose a teenaged version of Giannis to introduce himself, rather than a more contemporary clip, for a reason.  The purpose of Whistle's use is to juxtapose the young and green Giannis in the DraftExpress Interview and the now-famous professional NBA star he became in the highlight reel that follows.  DraftExpress recorded an interview with Giannis for the purpose of getting to know a young basketball prospect and learning about him via his own words.  Whistle used the two-second introduction for the purpose of showing the literal transformation of a young adolescent into a dominant athletic force.  Instead of serving as the introduction to a traditional interview, the Whistle Video uses the two-second clip from the DraftExpress Interview to set the stage for Giannis' extraordinary basketball career metamorphosis—one that sprang from a seemingly ordinary teenage boy.  Contrary to DraftExpress's contention, Whistle's use does provide implicit commentary on DraftExpress's original—it contrasts the hunched-over young man depicted in the Interview with the powerful athlete shown in the highlights.  Therefore, Whistle's use is quite transformative.

The second part of the first fair use factor involves whether the new use is commercial— *i.e.*, "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) (quoting *Harper & Row Publishers, Inc. v. Nation*

---

[4] DraftExpress also argues that Whistle did not alter its original in the excerpt it used.  That is not entirely true, as the Whistle Video uses a filter that slightly changes the color hue.  The effect appears to be to make the clip appear older, to heighten the contrast with the recent highlights.  In any event, "even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007).

[5] All page references herein are to the page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-488-DMG (AGRx)** | Date | August 2, 2022 |
|---|---|---|---|

| Title | *DraftExpress, Inc. v. Whistle Sports, Inc.* | Page | 5 of 7 |
|---|---|---|---|

*Enterprises*, 471 U.S. 539, 562 (1985)).  Whistle claims—without any citation—that the Whistle Video was "not monetized in any manner."  MTD at 16.  Whistle is alleged to be a for-profit corporation.  *See* Compl. ¶¶ 6, 16.  Nonetheless, the only allegation regarding Whistle's use of its Video is that it posted it on Twitter, which means that it made the Video publicly available without direct charge.  Although Whistle's social media presence may serve to promote its business and indirectly boost revenue, the commercial use factor concerns "the degree to which the new user exploits the copyright for commercial gain—as opposed to incidental use as part of a commercial enterprise."  *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013).  Even if the Whistle Video were considered at least partially commercial, its transformative nature offsets the significance of any commercialism.  *See Campbell*, 510 U.S. at 579 ("[t]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use."); *Google*, 141 S. Ct. at 1204 ("many common fair uses are indisputably commercial").[6]

Therefore, the first factor weighs in favor of fair use.

### 2.      Nature of the Copyrighted Work

In analyzing the second fair use factor, the Court looks at the nature of the copyrighted work, with creative works being "'closer to the core of intended copyright protection' than informational and functional works."  *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc*., 109 F.3d 1394, 1402 (9th Cir. 1997),  (quoting *Campbell,* 510 U.S. at 586).  The Court also considers whether the copyrighted work is published or unpublished, as the former allows for greater leeway for claims of fair use.  *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) ("Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred.").

The parties do not dispute that the DraftExpress Interview was published—and had been for eight years, in fact.  The Interview is also quintessentially factual and informational, with relatively little creativity.   While creativity can exist in interviews—such as using a nontraditional format, colorful lighting, or surprising questions—that is not the case here.  DraftExpress asked Giannis typical interview questions designed to elicit basic biographical and sports-related information about himself.  Visually, the DraftExpress Interview is a simple, static close-up shot of Giannis talking.  The second fair use factor thus weighs heavily in favor of Whistle.

---

[6] DraftExpress also argues—in conclusory fashion—that Whistle's use was in bad faith.  But courts have "expressed some skepticism about whether bad faith has any role in a fair use analysis."  *Google*, 141 S. Ct. at 1204.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-488-DMG (AGRx)** | Date | August 2, 2022 |
|---|---|---|---|

| Title | ***DraftExpress, Inc. v. Whistle Sports, Inc.*** | Page | 6 of 7 |
|---|---|---|---|

### 3.      Amount and Substantiality of the Portion Used

The third fair use factor considers whether the amount and substantiality of the portion used is reasonable in relation to the purpose of the copying. *Wall Data*, 447 F.3d at 780. The factor has both a quantitative and qualitative component. "[E]ven a small amount of copying may fall outside of the scope of fair use where the excerpt copied consists of the 'heart' of the original work's creative expression." *Google*, 141 S. Ct. at 1205 (quoting *Harper & Row*, 471 U.S. at 564–565).

The two-second portion of the DraftExpress Interview that Whistle used comprises just 1% of its total three minutes and ten seconds. DraftExpress' argument that the two-second clip comprises the "heart" of the entire piece is unconvincing. The heart of an interview is the interviewee's substantive answers to questions, especially any answer that is particularly interesting or unique, not the interviewee simply stating his name.[7] Thus, the third factor weighs heavily in favor of Whistle.

### 4.      Effect on the Potential Market

The fourth factor concerns whether the new work serves as a market substitute for the original or its derivatives. *Campbell*, 510 U.S. at 590. The Court must consider "not only the extent of market harm caused by the actions of the particular alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Id.* (internal quotation marks and alterations omitted).

There may very well be a real market for footage of a young Giannis, now that he has become famous, especially since the supply of such material is inherently fixed. But when "the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred." *Id.* at 591. Only the market for "traditional, reasonable, or likely to be developed" derivatives, relative to the original purpose of the first work, should be considered. *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994). Where the original work and the new work "serve different market functions," such that there is no market substitution, the new work is more likely to be fair use. *Campbell*, 510 U.S. at 591.

---

[7] Arguably, the heart of the Interview could be considered simply the visual depiction of a young Giannis and his voice, apart from what he or the interviewer actually said. In that sense, Whistle did take the heart of the Interview. But this formulation depends on hindsight, considering the value of the footage today, rather than the value DraftExpress intended to capture at the time it filmed the Interview.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-488-DMG (AGRx)** | Date | August 2, 2022 |
|---|---|---|---|

| Title | *DraftExpress, Inc. v. Whistle Sports, Inc.* | Page | 7 of 7 |
|---|---|---|---|

The Whistle Video is not a market substitute for the DraftExpress Interview because someone watching the former will have a "very different experience" from watching the latter. *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 47 (S.D.N.Y. 2017).   The market for the DraftExpress Interview—as originally contemplated—amounts to the interest in hearing the young Giannis talk about his career and his future.  None of that information is conveyed in the Whistle Video, which instead serves to satiate the fan's appetite for impressive basketball highlights accompanied by some creative commentary about the nature of Giannis' skills and where they came from.  Because the Whistle Video does not offer a substitute for the DraftExpress Interview, it cannot usurp the market that belongs to DraftExpress.  The fourth factor thus also weighs in favor of Whistle.

### 5.   Aggregate Assessment

In sum, all of the factors weigh in favor of fair use.  Moreover, the Court can readily determine that Whistle's use of the segment from the DraftExpress Interview is fair simply by comparing the two works—which reveals that the use is transformative, insubstantial, and not a market substitute, and that the DraftExpress Interview is not especially creative.  No additional facts are necessary to or would change the analysis.  Accordingly, the Court concludes that the Whistle's copying amounts to fair use of the DraftExpress Interview as a matter of law, and leave to amend would be futile.

Because the copying is fair use as a matter of law, the Court need not address whether it is also *de minimis*.

**IV.**
**CONCLUSION**

In light of the foregoing, the Court **GRANTS** Whistle's MTD and **DISMISSES** DraftExpress's Complaint with prejudice.

**IT IS SO ORDERED**.